**101 So.2d 206**

**D. V. JOHNSTON**

**v.**

**CITY OF NEW ORLEANS.**

**No. 43325.**

March 17, 1958.

John W. Bryan, Jr., New Orleans, for plaintiff-appellant.

Alvin J. Liska, City Atty., Wm. Boizelle, Asst. City Atty., Samuel I. Rosenberg, Atty., for Orleans Parish School Board, New Orleans, for defendants-appellees.

SIMON, Justice.

D. V. Johnston acquired certain property located in the subdivision known as Behrman Heights forming part of the Fifth Municipal District of the City of New Orleans and which he thereafter developed and subdivided for sale of lots for residential purposes. In connection therewith by a notarial act dated January 30, 1950 he dedicated certain streets to the public use, established servitudes in favor of the Sewerage and Water Board of New Orleans, and specially dedicated to public use a certain square of ground bearing No. 22, measuring 600 ft. by 300 ft., located in about the center of said subdivision, which were duly accepted in behalf of the City of New Orleans. The Mayor of the City of. New Orleans appeared as a party to the said notarial act, duly authorized by the

provisions of Ordinance No. 17,600 under which the dedication of the said property and its acceptance by the Mayor were approved. It appears from the act that the dedication of the streets and the servitude were made in consideration of the public convenience and necessity; and Square No. 22 was therein declared to be "dedicated to public use for school and playground purposes."

On March 8, 1955, more than five years following said dedication, Johnston filed this suit against the City of New Orleans to have the said act declared null and void and of no effect insofar and only as it purported to be a dedication or an offer of dedication of the said Square No. 22 for school and playground purposes on the grounds that the dedicated square had not been used for either school or playground purposes and that therefore the said non-use constituted an abandonment thereof. Plaintiff also alleged that the exclusive jurisdiction of the construction of school buildings and other improvements on school properties is vested in the Orleans Parish School Board, whereas the City of New Orleans has the exclusive jurisdiction and control of playgrounds, and that this alleged conflict of jurisdiction between these two corporate entities makes impossible the use of the said Square No. 22 for either school or playground purposes.

The City of New Orleans filed exceptions of no right or cause of action to plaintiff's petition. By supplemental petition the Orleans Parish School Board was made a party-defendant and it thereupon filed similar exceptions. After a hearing the said exceptions were maintained and plaintiff's suit was dismissed. Plaintiff now prosecutes this appeal.

▮▮▮ A review of the record reveals that evidence was received on the exception of no right of action, which exception raises only the question of whether or not the plaintiff has any interest in enforcing judicially the right asserted by him. Plaintiff testified that he had acquired certain property located in the Fifth Municipal District of the City of New Orleans, and known as Behrman Heights Subdivision; that he subdivided said property for the purpose of selling lots for residential purposes; that he had sold approximately 800 lots and that he still retained more than a hundred lots for sale; that more than half of the said lots were sold prior to the dedication of streets and the Square No. 22, and that other lots were sold subsequent thereto. Thus, it is manifest that the plaintiff herein has a real and actual interest to assert and pursue this litigation and that the exception of no right of action should have been overruled.

■ Article 15 of the Code of Practice provides that an action can only be brought by one having a real and actual interest which he pursues. One who has no interest has no standing in court. Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661, Ann.Cas.1914A, 1073; Waterhouse v. Star Land Co., 139 La. 177, 71 So. 358; Tichenor v. Dr. G. H. Tichenor's Antiseptic Co., 180 La. 119, 156 So. 194; Ideal Savings & Homestead Ass'n v. Scott, 181 La. 978, 160 So. 783; Schwartzenburg v. Louisiana Highway Commission, 184 La. 989, 168 So. 125; and Ritsch Alluvial Land Co. v. Adema, 211 La. 675, 30 So.2d 753.

■ In determining the correctness of the judgment maintaining the exception of no cause of action we are controlled by the well-settled law that an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. Outdoor Electric Advertising v. Saurage, 207 La. 344, 21 So.2d 375; Termini v. McCormick, 208 La. 221, 23 So.2d 52; Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257, 258; and Wischer v. Madison Realty Company, Inc., 231 La. 704, 92 So.2d 589. This exception is triable entirely on the face of the papers and all well-pleaded allegations of fact contained in the petition must be accepted as true. See

Wischer v. Madison Realty Company, Inc., supra, and authorities therein cited.

Plaintiff's petition alleges that in connection with the subdivision of his property he dedicated for the public necessity and convenience certain streets as well as Square No. 22 which was specifically dedicated to the public use for school and playground purposes.

He seeks to have the said dedication insofar as it relates to Square No. 22 declared null and void and of no effect on any one or all of several alleged grounds, namely, (1) that the dedicated property had never been used for either school or playground purposes which in effect constituted an abandonment thereof; (2) that the Orleans Parish School Board had not accepted the dedication nor was it a party to said act and that the City of New Orleans was without the power or authority to accept said dedication on behalf of said school board; and (3) that an alleged conflict of jurisdiction between the City of New Orleans and the Orleans Parish School Board makes impossible the use of said square for either school or playground purposes.

Although plaintiff's petition alleges a dedication of Square No. 22, it does not allege that the act of dedication contains or expresses any reservation or restriction whatsoever, save that for school and

playground purposes. The act of dedication reveals that no time limit is therein expressed or prescribed within which the property should be used as proposed nor is any reservation made that it should revert to the dedicator because of non-use within any prescribed time.

In the case of Moran v. Bechtel, 202 La. 380, 12 So.2d 1, 5, we find the following expression by this Court: "The fact that the property in contest was not immediately put to public use does not eliminate the presumption, juris et de jure, of its dedication to the public, because years after the creation of the Zimpel map, many of the streets and public places in Carrollton (notably Frederick Square), all shown thereon and now in use, lay undeveloped and unused until public necessity required their opening and development by the public officials.

"In the case of Richard v. City of New Orleans, 1940, 195 La. 898, 197 So. 594, the Court held that Elysian Fields Avenue, at Florida Walk, a dedicated avenue, which had remained in its original or unused state to the date of the litigation, was subject to opening for public use by the City authorities."

In Wilkie v. Walmsley, 173 La. 141, 136 So. 296, we held that where a grantor of land reserves in the grant the return of the land when public use ceases it is one thing, but when he makes no such express reservation, he parts absolutely with all title to the land given to public use, and whatever may become thereof he and his heirs have no further interest in such land.

The fact that the above cited cases dealt with streets does not render the principles declared therein inapplicable to the case at bar for in the earlier case of Town of Vinton v. Lyons, 131 La. 673, 60 So. 54, 55, we recognized that:

"The same principles which are applicable to the dedication of a public street apply to the dedication of a public park or square. All dedications for public uses are to be considered with reference to the purpose for which the dedication is made, or the uses to which the property dedicated may be applied, and that purpose may be ascertained by the dedication which the owner has affixed to the land upon the map, whether it be a street, a school lot, or a public park. The setting apart of a public park upon such a map is for the convenience and enjoyment of the inhabitants of the place; and, as it enhances the value of the private property thereon, so the owner who has dedicated it is presumed to have received, in the increased prices for which that property was sold, the compensation for its surrender to the public as a public park."

In Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229,

we said that the irrevocable character of the dedication was not affected by the fact that the property dedicated was not at once subjected to the uses designed.

■ Thus, we conclude that a mere negative non-user, or delay in beginning use, accompanied by no acts showing intention of never using, and not complicated by actual user by some private party, or for a purpose other than that expressly proposed, does not constitute an abandonment and has no effect on the rights of the public, no matter how long the non-user is continued. There must be some affirmative act manifesting the intent to abandon the dedicated property. See 26 C.J.S. Dedication § 63, page 555. We find no allegation in plaintiff's petition of any affirmative act on the part of the City of New Orleans manifesting any intention of abandoning or of never using the dedicated property.

■ The allegation that the Orleans Parish School Board was not a party to the act of dedication or did not accept the dedicated property does not in itself state a cause of action for the revocation or annulment of the dedication. Clearly the property herein was irrevocably dedicated for public use for school and playground purposes for it cannot be denied that the beneficiary for such a dedication is the public, an ever-existing grantee capable of taking and enjoying the rights, privileges and use of the dedication.

We are in agreement with the fundamental principles of dedications that the most definite form of dedication is by a deed setting forth the exact purposes for which the land is conveyed, and a record thereof, together with a plat of the property. The deed may be made to a designated grantee and convey in trust for the public either the fee or an easement, or may be for a designated purpose, without any grantee. See Am.Juris., Vol. 16, Sec. 21, page 364.

"The interests of those beneficially entitled to easements or dedications of a public, charitable, or religious character are not allowed to lapse or fail for want of what is technically called 'a person' to take the legal title, the public being an ever-existing grantee capable of taking the dedication." Am.Juris., Vol. 16, Sec. 14, page 358.

We are also in agreement with the law pronounced in the frequently cited case of Board of Regents of Normal School—Dist. No. 3 v. Painter, 102 Mo. 464, 14 S.W. 938, 939, 10 L.R.A. 493, wherein it is said:

"The owner of lands may devote and dedicate them to public use, and it is now well-settled law that a dedication of lands to public use does not require the existence of a corporation in which to vest the title. Such a dedication will be valid without

any specific grantee in existence at the time of the dedication * * * Rutherford v. Taylor, 38 Mo. 317; Trustees of Methodist Episcopal Church, etc., v. Mayor, etc., of City of Hoboken, 33 N.J.L. 13, 16."

The alleged conflict of jurisdiction between the City of New Orleans and the Orleans Parish School Board does not state a cause for the revocation or annulment of the dedication. Under our law, the property having been dedicated to public use for school and playground purposes, the City and the School Board are authorized to validly establish joint facilities to accomplish the purpose contemplated by the grant

LSA–R.S. 33:4552 empowers municipalities to provide for the equipment, maintenance and conduct of playgrounds. LSA–R.S. 33:4555 empowers two or more municipalities or parishes to jointly establish, maintain and conduct recreation systems and facilities and significantly adds "Any school board may join with any such subdivisions for this purpose." LSA–R.S. 33:1324 authorizes the city and the parish to engage jointly in "recreational and educational facilities, such as playgrounds, recreation centers, parks and libraries", as well as in educational projects, constructions and improvements.

The right of the City of New Orleans to accept and carry out the purpose is also sanctioned by Section 17 of Act 4 of 1916, recognized as being in full force and effect by Article XIV, Sec. 24, of the Constitution of 1921, LSA, and Act 205 of 1928, which provides in part "that the City of New Orleans shall administer, use and employ all the funds, property or things of value now or hereafter held by it under any special legacy, bequest or donation made or to be made directly to it for school purposes, and shall carry out and execute the conditions of all such special legacies, bequests or donations that have been heretofore made to and accepted by said City of New Orleans and all such as may hereafter be made to and accepted by said city."

Furthermore, the City of New Orleans, through its Mayor, was authorized and directed to transfer to the Orleans Parish School Board title to any and all school property now or hereafter standing in the name of the City and dedicated exclusively to school purposes by virtue of an Amendment to Article IV, Section 12 of the Louisiana Constitution of 1921.

We can find nothing improper or even unusual for the property to be dedicated to and accepted by the City of New Orleans to be used for educational purposes. The celebrated will of the late John McDonogh left a substantial portion of his estate to the City of New Orleans to be used "for

the education of the poor * * *" and this legacy formed a substantial foundation upon which the present public school system in this Parish was built. The validity of this legacy was attacked in both the State and Federal Courts, but, nevertheless, was consistently maintained and upheld. See State v. Executors of John McDonogh, 8 La.Ann. 171; McDonogh's Executors v. Murdoch, 15 How. 367, 56 U.S. 367, 14 L.Ed. 732; Society for Relief of Destitute Orphan Boys v. City of New Orleans, 12 La.Ann. 62; City of New Orleans v. The Commissioners of the Estate of John McDonogh, 12 La.Ann. 240; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237; and Carrere v. City of New Orleans, 162 La. 981, 111 So. 393.

Certainly, therefore, for the same reasons enunciated in the foregoing authorities, the dedication of the instant property for school and playground purposes cannot be attacked on the ground that the Orleans Parish School Board was not a party to the act of dedication or has failed to accept same.

Accordingly, for the reasons assigned, the judgment of the trial court maintaining the exception of no right of action is reversed and the said judgment maintaining the exception of no cause of action and dismissing plaintiff's suit at his cost is affirmed.