Ronald and Darlene OURS, Ross Melick, Jeffrey W. Spencer, Grette Herrick, David and Meshelle Meiers, and James and Verjean Joiner, Plaintiffs–Appellants–Respondents,

v.

CITY OF ROLLA, Missouri, a municipal corporation; Elwyn E. Wax, Mayor; and Edward Rothwell, Kenneth Smith, Gladys Light, Ed Owsley, Wilton Painter, Susan Eudaly, Louis Magdits, Mark Rolufs, Ray Hoevelmann, Jim Williams, Robin Kordes, Mary Daily, Members of City Council, Defendants–Respondents–CrossAppellants.

Nos. 22709, 22724.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 12, 2000.

Motion for Rehearing or Modification
Denied Feb. 2, 2000.

Lewis C. Green, Bruce A. Morrison, Green, Hennings & Henry, LLP, St. Louis, for Plaintiffs–Appellants–Respondents.

John D. Beger, Beger & Bushie, L.L.C., Rolla, for Defendants–Respondents–Cross–Appellants.

**KERRY L. MONTGOMERY, Presiding Judge.**

For the second time this case comes before us. Initially, Plaintiffs sought to enjoin Defendant City of Rolla (City), its mayor and city council members from selling city property known as Buehler Park to Cracker Barrel Old Country Store, Inc. (Cracker Barrel). The trial court ruled that Plaintiffs lacked standing to challenge the proposed sale of the park property. In *Ours v. City of Rolla*, 965 S.W.2d 343 (Mo.App.1998), we affirmed the trial court's judgment (*Ours I* ).

The City's sales contract with Cracker Barrel, dated March 3, 1997, called for a purchase price of $500,000. The trial court's initial judgment was entered on April 18, 1997. That same day, at Plaintiffs' request, the trial court enjoined the City from selling Buehler Park to Cracker Barrel during the pendency of Plaintiffs' appeal and ordered Plaintiffs to post a $40,000 injunction bond. Plaintiffs complied with the order.

Cracker Barrel "withdrew" from its contract with the City in May 1997.[1] The mandate from this Court in *Ours I* was filed in the trial court on May 29, 1998. On June 8, 1998, the City filed a "Motion for Assessment of Damages against Deposit with Court." After a hearing the trial court ordered that the City recover $35,240.33 from Plaintiffs' bond deposit. Both parties appeal.

On appeal, the City only contends that the trial court should have awarded damages for the full amount of the injunction bond. Plaintiffs' appeal presents five points relied on. We conclude that Plaintiffs' fifth point is dispositive of both appeals. Under Point V, Plaintiffs argue that the trial court improperly excluded evidence of Buehler Park's fair market value during the time Plaintiffs' injunction prevented the sale to Cracker Barrel.

Our review is under Rule 73.01. Under that rule, we affirm the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990).

"The measure of damages recoverable on an injunction bond is the amount necessary to compensate a defendant for losses directly caused by the restraint, while it is in force." *Kahn v. Royal Banks of Missouri*, 790 S.W.2d 503, 511 (Mo.App.

---

1. The sales contract between the City and Cracker Barrel is not part of the record before us. Assuming the contract allowed "withdrawal" would be speculation on our part. However, nothing in the record indicates that the City has pursued a breach of contract action against Cracker Barrel.

1990). "The party seeking damages has the burden of proving loss which is the direct result of the issuance of the restraining order." *Id.* When a party is damaged by the improvident issuance of an injunction, recovery is limited to the amount of the injunction bond. *Hamilton v. Hecht*, 299 S.W.2d 577, 579 (Mo.App. 1957).

During the hearing on the City's motion, Plaintiffs attempted to introduce in evidence an appraisal of Buehler Park received by the City in October 1996 from Stoltz Appraisal Company. The appraisal determined that Buehler Park had a value of $680,000. The City's attorney objected to the appraisal evidence stating "[w]hether the park was really worth $100,000 or $1,100,000 is irrelevant." Plaintiffs' attorney argued that the injunction "turned out to be a very valuable thing to the City" and consequently "there are no damages." The trial court sustained the objection and rejected Plaintiffs' offer of proof on the appraised value of Buehler Park.

■■■ If Cracker Barrel had breached the sales contract, unquestionably, the City's measure of damage would have been the "difference between the contract price and the market value of the property on the date the sale should have been completed." *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 332 (Mo.App.1995). "Upon breach, the seller may resell the property or keep the property and, with either choice, the seller is entitled to recover the difference between the contract price and the market price." *Id.* "[A]n essential element of the seller's case is proof of market value...." *Leonard v. American Walnut Co., Inc.*, 609 S.W.2d 452, 455 (Mo.App.1980). "Obviously, where market value equals or exceeds the contract price in the agreement breached, the seller has suffered no loss and is entitled to no recovery from the buyer. Thus, the issue ... is a determination of market value." *Id.* Clearly, to properly assess a seller's damages, the trial court needs "evidence of the contract price and market value." *Hoelscher v. Schenewerk*, 804 S.W.2d 828, 832 (Mo.App.1991).

Plaintiffs in this case are not unlike a defaulting buyer in a real estate sales contract. Plaintiffs obtained an injunction preventing the City from selling Buehler Park while they unsuccessfully appealed. Cracker Barrel withdrew from the contract during the appeal. Thus, the City's efforts to sell Buehler Park were frustrated by Plaintiffs' injunction.[2]

A defaulting buyer is entitled to show the seller of real estate suffers no damage if the fair market value of the subject property equals or exceeds the purchase price. Here, Plaintiffs were denied the opportunity to present such evidence. If believed, Plaintiffs' rejected evidence would have demonstrated that the City suffered no loss as a direct result of the injunction against selling Buehler Park.

Under the facts of this case, we fail to see any difference between damages flowing from the injunctive restraint and damages flowing from a buyer's default. In either situation, the seller still owns the real estate. Therefore, we hold that the fair market value of Buehler Park is relevant to the issue of the City's damages, and the trial court erred in rejecting Plaintiffs' evidence on that issue.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion. Upon remand, the trial court is directed to hear additional evidence upon the request of either party on the fair market value of Buehler Park as of May 29, 1998.[3] After receiving

---

2. In awarding damages, the trial court treated Plaintiffs like a defaulting buyer by viewing Plaintiffs' injunction as thwarting the sale of Buehler Park. Most of the damages awarded consisted of the City's lost revenue from the net sales amount invested at a 5% rate of return.

3. The injunctive restraint ended on the date our mandate was filed in the trial court. The City is entitled to damages, if any, caused

**630**

such evidence, the trial court shall determine the fair market value of Buehler Park and recalculate the City's damages, if any.

PREWITT, J., and BARNEY, J., concur.

while the restraint was in force. *Kahn,* 790     S.W.2d at 511.